Bobby Saadian, SBN 250377
bobby@wilshirelawfirm.com
Justin F. Marquez, SBN 262417
justin@wilshirelawfirm.com
Thiago M. Coelho, SBN 324715
thiago@wilshirelawfirm.com
Robert J. Dart, SBN 264060
rdart@wilshirelawfirm.com
Patty W. Chen, SBN 322992
patty@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs
and Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER CAMPBELL; GILLIAN SCHAADT; and SHREYAS SINDAGHATTA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>FIRST AMERICAN FINANCIAL CORPORATION, a Delaware corporation; FIRST AMERICAN TITLE COMPANY, a California corporation; and DOES 1 to 10, inclusive,<br><br>          Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

Plaintiffs Roger Campbell, Gillian Schaadt, and Shreyas Sindaghatta ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action based upon their personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of their attorneys.

## NATURE OF THE ACTION

1.    Defendants First American Financial Corp. and First American Title Company ("Defendants" or "First American") are together the largest parent and subsidiary title insurer in the United States.  Thousands of consumers come to First American every week for title insurance, trusting First American with their sensitive financial and personal information.  Those consumers reasonably expect the highest level of protection for their private identifiable information ("PII"), when giving highly sensitive information such as their Social Security numbers and banking information to First American.  What First American customers do not expect, and did not expect, was that their personal and sensitive information would be harvested by unauthorized individuals.

2.    Plaintiffs, individually and on behalf of those similarly situated persons (hereafter, "Class Members"), bring this class action to secure redress against Defendants for their reckless and negligent violation of customer privacy rights.  Plaintiffs and Class Members are individuals who were First American customers and whose PII was exposed by the breach.

3.    Plaintiffs and Class Members suffered significant injuries and damages.  The security breach compromised all of the information in the customers' personnel files, including, their full names, addresses, social security numbers, financial and tax records, and images of drivers' licenses (referred to collectively as "PII") going back as far as 2003.

4.    As a result of Defendants' wrongful actions and inactions, unauthorized individuals gained access to and harvested Plaintiffs' and Class Members' PII.  Plaintiffs have been forced to take remedial steps to protect themselves from future loss.  Indeed, all Class Members are currently at a very high risk of identity theft and/or credit fraud, and prophylactic measures, such as the purchase of credit monitoring, are reasonable and necessary to prevent and mitigate future loss.

5.      As a result of Defendants' wrongful actions and inactions, customer information was stolen.  Many First American customers have had their PII compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

6.      Further, despite the fact that the breach was discovered by real estate developer Ben Shoval in May of this year, First American has yet to issue a letter or notice actually informing its customers of the nature of the breach, its duration, or of the necessary precautionary steps that they must take.

### THE PARTIES

7.      Plaintiff Roger Campbell is a California citizen residing in Copperopolis, California.  Plaintiff Campbell utilized First American's title insurance, pursuant to which Plaintiff Campbell gave his PII to First American.  Plaintiff Campbell entered a contract with First American which incorporated a contractually binding privacy policy.  Plaintiff Campbell is informed and believes that, as a result of the data breach that took place at First American, Plaintiff Campbell's PII was accessed by hackers.  As a result, Plaintiff Campbell has to purchase credit and personal identity monitoring service to alert him to potential misappropriation of his identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiff Campbell has suffered compensable damages because he will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss.  Plaintiff Campbell has also suffered $900 in out of pocket losses for identity theft resulting from the data breach.  Exposure of Plaintiff's PII as a result of the First American data breach has placed him at imminent, immediate and continuing risk of further identity theft-related harm.

8.      Plaintiff Gillian Schaadt is a California citizen residing in Ladera Ranch, California. Plaintiff Schaadt utilized First American's title insurance, pursuant to which Plaintiff Schaadt gave her PII to First American.  Plaintiff Schaadt entered a contract with First American which incorporated a contractually binding privacy policy.  Plaintiff Schaadt is informed and believes that, as a result of the data breach that took place at First American, Plaintiff Schaadt's PII was accessed by hackers.  As a result, Plaintiff Schaadt has to purchase credit and personal

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

identity monitoring service to alert her to potential misappropriation of her identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiff Schaadt has suffered compensable damages because she will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss.  Plaintiff Schaadt has also suffered $2,000 in out of pocket losses for identity theft resulting from the data breach.  A woman created a fake ID with Plaintiff Schaadt's picture and identifying information and withdrew $2,000 from her account.  Exposure of Plaintiff's PII as a result of the First American data breach has placed her at imminent, immediate and continuing risk of further identity theft-related harm.

9.     Plaintiff Shreyas Sindaghatta is a California citizen residing in San Diego, California.  Plaintiff Sindaghatta utilized First American's title insurance, pursuant to which Plaintiff Sindaghatta gave his PII to First American.  Plaintiff Sindaghatta entered a contract with First American which incorporated a contractually binding privacy policy.  Plaintiff Sindaghatta is informed and believes that, as a result of the data breach that took place at First American, Plaintiff Sindaghatta's PII was accessed by hackers.  As a result, Plaintiff Sindaghatta has to purchase credit and personal identity monitoring service to alert him to potential misappropriation of his identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiff Sindaghatta has suffered compensable damages because he will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss.  Plaintiff Sindaghatta has also noticed strange activity on his credit card account resulting from the data breach.  Someone tried to log in to his account from Russia.  Exposure of Plaintiff's PII as a result of the First American data breach has placed him at imminent, immediate and continuing risk of further identity theft-related harm.

10.    Defendant First American Financial Corporation is a Delaware corporation with its principal offices located in Santa Ana, California.

11.    Defendant First American Title Company is a California corporation with its principal place of business in Santa Ana, California.  First American Title Company is a subsidiary of First American Financial Corporation.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

12.     Plaintiffs are unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 10.  Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 10 if and when ascertained.  Plaintiffs are informed and believes, and thereupon alleges, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the defendants sued herein as a DOE proximately caused injuries and damages to Plaintiffs and Class Members as set forth below.

13.     As used herein, "Defendants" shall refer to First American and Does 1 to 10, collectively.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendants, there are more than 100 putative class members, and the amount in controversy exceeds $5 million.

15.     The Court has personal jurisdiction over Defendants because Plaintiffs' and Class Members' claims arise out Defendants' business activities conducted in the State of California and through its interactive website through which it conducts business with California citizens.

16.     Venue is appropriate in this District because, among other things: (a) Defendants maintain offices in this District, where they conduct substantial business; (b) Defendants directed their activities at residents in this District; and (c) many of the acts and omissions that give rise to this Action took place in this judicial District.

17.     Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct a large amount of their business in this District, and because Defendants have substantial relationships in this District.

## FACTUAL ALLEGATIONS

### A. CMG's Data Breach

18.     Defendants First American are the largest title insurer in the nation.  In May 2019 real estate developer Ben Shoval discovered a shocking data breach on Defendants' website.  Mr.

Shoval realized that he could access documents on the website that he should not have been able to access simply by changing a digit in the URL. First American provides its customers with access to their own documents by sending them URLs via email. A URL might, for example, end in "DocumentID=000000078." Mr. Shoval realized that if he changed the final digits to "DocumentID=000000079" that he would then be given access to a different document associated with that ID—a document belonging to someone else. By changing the digits more times, Mr. Shoval could gain access to yet more confidential files. Because First American's document identification system numbers its documents sequentially, only time would be required to access all 885 million customer documents.

19.    Mr. Shoval contacted Defendants but they refused to take any ameliorative action or respond to his messages. Accordingly, Mr. Shoval contacted a journalist who wrote an article about the security breach on May 24, 2019. The journalist, Brian Krebs, published an article stating that 885 million files could be accessed by anyone on First American's website. Brian Krebs also contacted First American. First American did not respond to Mr. Krebs, although it did terminate access to the records on the website.

20.    First American made repeated promises and representations to Plaintiffs and the Class Members on its website and in physical form, that it would protect its patients' PII from disclosure to unauthorized third parties. Specifically, its Privacy Notice states, "we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law." Privacy Notice, attached hereto as **Exhibit A**. It also states, "[w]e will use our best efforts to ensure that no unauthorized parties have access to any of your information," and that "[w]e restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you." *Id*. It further provides, "[w]e will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values." *Id*. Finally, it states, "We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

information." *Id.* The Privacy Notice was incorporated into Defendants' contracts with Plaintiffs and the Class Members.

21.    Defendants promised that they would not disclose Plaintiffs' and the Class Members' PII to any unauthorized third parties, and would restrict access to the PII to those individuals who needed to know the information in order to provide services to Plaintiffs and the Class Members. In fact, they allowed hackers to obtain it.

### B. *Defendants Had an Obligation to Protect Personal Information under Federal Law.*

22.    Defendants are prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).

### C. *California Recognizes the Importance of PII*

23.    California Civil Code § 1798.81.5(a)(1) states that: "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information." Section 1798.81.5(b) further provides that "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Further, § 1798.81.5(c) provides that "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party that is not subject to subdivision (b) shall require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

///

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### D. Applicable Standards of Care

24.     In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiffs and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiffs and the Class Members.

25.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

26.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

27.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to implement processes that would detect a breach of their data security systems in a timely manner.

28.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to act upon data security warnings and alerts in a timely fashion.

29.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase title insurance or other services from Defendants or to entrust PII with Defendants.

30.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

31.    Defendants owed a duty of care to Plaintiffs and the Class Members because they were foreseeable and probable victims of any inadequate data security practices.  Defendants collected PII from Plaintiffs and the Class Members directly.  Defendants knew that a breach of its data systems would cause Plaintiffs and the Class Members to incur damages.

### E.  Stolen Information Is Valuable to Hackers and Thieves

32.    It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers.  Especially in the financial industry, the issue of data security and threats thereto is well known.  Despite well-publicized litigation and frequent public announcements of data breaches, Defendants maintained an insufficient and inadequate system to protect the PII of Plaintiffs and Class Members.  Because Defendants had an insufficient and inadequate system, their PII was easily acquired by unauthorized individuals in this case.

33.    Legitimate organizations and members of the criminal underground alike recognize the value of PII.  Otherwise, they would not aggressively seek and pay for it.  As previously seen in one of the world's largest data breaches, hackers compromised the card holder data of 40 million of Target's customers.  *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies /target-credit-card/.  DataCoup is, in contrast, just one example of a legitimate business that pays users for personal information.  *See* http://money.com/money/3001361/datacoup-facebook-personal-data-privacy/.

34.    PII is highly valuable to hackers.  Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  PII that is stolen from the point of sale are known as "dumps."  *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/.  PII can be used to clone a debit or credit card.  *Id.*

35.    Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details.  During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

36.    In addition to PII, a hacked email account can be very valuable to cyber criminals. Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[1]

37.    As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[2]



38.    Hacked information can also enable thieves to obtain other personal information through "phishing."    According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-

---

[1] Identity Theft and the Value of Your Personal Data, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data.
[2] Brian Krebs, The Value of a Hacked Email Account, Krebs on Security (June 13, 2013, 3:14 PM), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[3]

39.     Financial records are huge targets for fraudsters because they typically contain all of the information thieves would need to conduct mischief in the victim's name—from fraudulently opening new lines of credit to filing phony tax refund requests with the Internal Revenue Service.  Indeed, these records are constantly sold in the dark-web.[4]

### D.  The Data Breach Has Resulted and Will Result in Identity Theft and Identity Fraud

40.     Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiffs and Class Members.

41.     The ramifications of Defendants' failure to keep Plaintiffs' and Class Members' PII secure is severe.  According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year."  "Someone Became an Identity Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014 *available* at http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html.

42.     In the case of a data breach, simply reimbursing a consumer for a financial loss due to fraud does not make that individual whole again.  On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."  *See* "Victims of Identity Theft," U.S. Department of Justice, Dec. 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf.    In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims."  *Id.* at 11.

43.     A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years.  It may take some time for the victim

---

[3] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf
[4] Brian Krebs, Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm (Sept. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/#more-27860

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

to become aware of the theft or fraud.  In addition, a victim may not become aware of fraudulent charges when they are nominal, because typical fraud-prevention algorithms fail to capture such charges.  Those charges may be repeated, over and over again, on a victim's account, without notice for years.

### F.    Annual Monetary Losses from Identity Theft are in the Billions of Dollars

44.    According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.  Among identity theft victims, existing bank or credit card accounts were the most common types of misused information.  *Id*.

45.    Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013.  *See* 2013 Identity Fraud Report. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used.  According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO, Report to Congressional Requesters, at 33 (June 2007), *available* at http://www.gao.gov/new.items/d07737.pdf.

46.    As a result of the data breach, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.  Plaintiffs and Class Members are also subject to a higher risk of phishing and pharming where hackers exploit information, they already obtained in an effort to procure even more PII.  Plaintiffs and Class Members are presently incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.  In addition, Plaintiffs and Class Members now run the risk of unauthorized

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

### G. *Plaintiffs and Class Members Suffered Damages*

47.     The exposure of Plaintiffs' and Class Members' PII to unauthorized third-party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure, as required by their contracts with Plaintiffs and the Class Members, and state and federal law.  The data breach was also a result of Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and state and federal law

48.     Plaintiffs' and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendants.  Defendants did not obtain Plaintiffs' and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

49.     Plaintiffs overpaid for the services provided by First American, as part of the fees paid by Plaintiffs and Class Members included providing proper cybersecurity, and protecting their sensitive information.

50.     As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

51.     Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' PII, causing

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.    The improper disclosure, compromising, and theft of their PII;

    b.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized third-party hackers and misused via the sale of Plaintiffs' and Class Members' information on the Internet black market;

    c.    The untimely and inadequate notification of the data breach;

    d.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

    e.    Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market; and

    g.    Overpayments to Defendants for any fees paid by Plaintiffs and Class Members for services as implied in the fees paid to First American by Plaintiffs and Class Members that some amount of the fees would be applied to the costs of implementing reasonable and adequate safeguards and security measures that would protect their PII, which Defendants failed to implement and, as a result, Plaintiffs and Class Members did not receive what they paid for and were overcharged by Defendants.

## CLASS ACTION ALLEGATIONS

52.    Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated under Rule 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure. Plaintiffs intend to seek certification of a Class defined as follows:

> All persons residing in the State of California whose Personal Identifying Information was maintained by First American Financial Corporation and/or First American Title Company and was compromised as a result of the breach which was reported on or about May 24, 2019 (the "Class").

53.    Excluded from the Class are: (a) Defendants, including any entity in which any of

WILSHIRE LAW FIRM, PLC<br>3055 Wilshire Blvd, 12ᵗʰ Floor<br>Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

the Defendants have a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiffs reserve the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

54.    *Numerosity*. The members of the Class are so numerous that the joinder of all Class Members is impractical.  While the exact number of Class Members is unknown to Plaintiffs at this time, given the number of First American customers in California, it stands to reason that the number of Class Members is in the millions.  Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information.

55.    *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendants owed a duty of care to Plaintiffs and Class Members with respect to the security of their PII;

b.    What security measures must be implemented by Defendants to comply with their duty of care;

c.    Whether Defendants met the duty of care owed to Plaintiffs and the Class Members with respect to the security of the PII;

d.    Whether Defendants have a contractual obligation to Plaintiffs and Class Members to use reasonable security measures;

e.    Whether Defendants have complied with any contractual obligation to use reasonable security measures;

f.    What security measures must be implemented by Defendants to comply with their contractual obligations to use reasonable security measures;

g.    Whether Defendants' acts and omissions described herein violated Section 5 of the FTC Act, 15 U.S.C. § 45;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

h.  Whether Defendants' acts and omissions described herein violated California Civil Code § 1798.81.5;

i.  What security measures, if any, must be implemented by Defendants to comply with its contractual and statutory obligations;

j.  The nature of the relief, including equitable relief, to which Plaintiffs and Class Members are entitled; and

k.  Whether Plaintiffs and Class Members are entitled to damages, civil penalties and/or injunctive relief.

56.  *Typicality*. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of each of the other Class Members, was exposed and/or improperly disclosed by Defendants.

57.  *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.  Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiffs intends to prosecute this action vigorously.  Plaintiffs and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief.  Therefore, all Class Members will be fairly and adequately represented by Plaintiffs and their counsel.

58.  *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court.  Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

59.  Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

15

1    corresponding declaratory relief is appropriate as to the Class as a whole.

2                                    **FIRST CAUSE OF ACTION**

3                        (Breach of Express And/or Implied Contractual Promise)

4            60.    Plaintiffs repeat and incorporate herein by reference each and every allegation

5    contained in paragraphs 1 through 59, inclusive, of this Complaint as if set forth fully herein.

6            61.    Defendants solicited and invited Plaintiffs and Class Members to become

7    customers of First American.  Plaintiffs and Class Members accepted Defendants' offers, became

8    customers of First American, and entered into contracts for title insurance and other services with

9    First American.

10          62.    First American's Privacy Notice, which it provided on its website and gave to its

11   customers in paper, formed a part of its contracts with Plaintiffs and the Class Members.

12   Accordingly, the Privacy Notice is contractually binding upon Defendants with regard to

13   Plaintiffs and each of the Class members.

14          63.    The Privacy Notice describes Defendants' contractual duty to safeguard and

15   protect Plaintiffs' and the Class Members' PII. Specifically, the Privacy Notice states, "we will

16   not release your information to nonaffiliated parties except:  (1) as necessary for us to provide the

17   product or service you have requested of us; or (2) as permitted by law." Privacy Notice, attached

18   hereto as **Exhibit A**.  It also states, "[w]e will use our best efforts to ensure that no unauthorized

19   parties have access to any of your information," and that "[w]e restrict access to nonpublic

20   personal information about you to those individuals and entities who need to know that

21   information to provide products or services to you." *Id*.  It further provides, "[w]e will use our

22   best efforts to train and oversee our employees and agents to ensure that your information will be

23   handled responsibly and in accordance with this Privacy Policy and First American's Fair

24   Information Values." *Id*.  Finally, it states, "We currently maintain physical, electronic, and

25   procedural safeguards that comply with federal regulations to guard your nonpublic personal

26   information." *Id*.

27          64.    The contractual duty to protect and safeguard Plaintiffs' and the Class Members'

28   PII, which Defendants promised to undertake, was, even apart from the language of the Privacy

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

16

COMPLAINT AND DEMAND FOR JURY TRIAL

Notice, a term of the contract by operation of law under Section 5 of the FTC Act, 15 U.S.C. § 45, and under Cal. Civ. Code § 1798.81.5. Under California law, all laws in place at the time a contract is entered which are relevant to the subject matter of that contract become binding terms of the contract. *Akopyan v. Wells Fargo Home Mortg., Inc.*, 215 Cal. App. 4th 120, 135, 155 Cal. Rptr. 3d 245, 253 (2013) "[A]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." ' [Citation.]") (quoting *Swenson v. File* (1970) 3 Cal.3d 389, 393, 90 Cal.Rptr. 580, 475 P.2d 852.). Therefore, Section 5 of the FTC Act and Cal. Civ. Code § 1798.81.5 also formed a contractual term in each of Defendants' contracts with Plaintiffs and the Class Members.

65.     Finally, the promise to safeguard and protect Plaintiffs' and the Class Members' PII, and keep that PII from being accessed by third parties, was implied as a matter of law because Defendants, Plaintiffs, and the Class Members entered their agreements with the expectation and implied mutual understanding that Defendants would strictly maintain the confidentiality of the PII and safeguard it from theft or misuse.

66.     Therefore, Plaintiffs and Class Members became patients of CMG pursuant to the mutually agreed-upon contracts with Defendants under which Defendants agreed to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' personal information from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiffs' and Class Members' PII.

67.     Plaintiffs and Class Members would not have provided and entrusted their PII to Defendants in the absence of the proper security safeguards and the promise to keep their PII safe.

68.     Plaintiffs and Class Members fully performed their obligations under their agreements with Defendants.

69.     Defendants breached the contractual promise that they made to Plaintiffs and Class Members by failing to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiffs' and Class Members' PII.

70.    Plaintiffs and Class Members have lost the benefit of their bargain with Defendants by having their PII compromised and exposed and by being placed at an imminent, immediate and continuing risk of identity theft-related harm.  Plaintiffs and the Class Members' contractual expectation was that their PII would be safeguarded and protected.  Therefore, they paid more for Defendant's services than they would have paid had they known that their PII would not be protected.  Further, due to the fact that their PII was not protected, Plaintiffs and the Class Members incurred losses associated with the loss of PII privacy, including theft, identity theft, and the risk of theft and identity theft, along with the necessity of cancelling credit cards and paying for additional protection through the market.  Plaintiffs and the Class Members also accepted pricing terms which they would not have agreed to had they known that Defendants would not protect their PII.

71.    As a direct and proximate result of Defendants' breaches of the contractual promises alleged herein, Plaintiffs and Class Members sustained actual losses and damages in an amount according to proof at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing)

72.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 71 inclusive, of this Complaint as if set forth fully herein.

73.    California law implies a covenant of good faith and fair dealing in every contract.

74.    Plaintiffs and Class Members contracted with Defendants by accepting Defendants' offers and becoming patients of CMG.

75.    Plaintiffs and Class Members performed all of their duties under their agreements with Defendants.

76.    All of the conditions required for Defendants' performance under the contracts have occurred.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

77.    Incorporated in the contracts as a matter of law was the covenant of good faith and fair dealing, which prevents a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.  The implied covenant imposes on a contracting party not only the duty to refrain from acting in a manner that frustrates performance of the contract, but also the duty to do everything that the contract presupposes that the contracting party will do to accomplish its purposes.

78.    Here the implied covenant of good faith and fair dealing required Defendants to safeguard and protect from disclosure to third parties the PII of Plaintiffs and the Class Members which was turned over to Defendants only for the purposes of performing or procuring medical services for Plaintiffs and the Class Members.  As terms of the contract, Defendants promised to use physical, electronic, and procedural safeguards to protect the PII, and promised to shield the PII from disclosure to unauthorized third parties.  In purportedly carrying out these promises, Defendants breached the implied covenant of good faith and fair dealing by failing to actually adequately protect the PII, and instead allowing it to fall into the hands of unauthorized third parties.  Plaintiffs and the Class Members could not enjoy Defendant's services without the safeguarding and protection of the PII.

79.    Defendants breached the covenant of good faith and fair dealing implied in their contracts with Plaintiffs and Class Members by engaging in the following conscious and deliberate acts: (a) failing to implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided access to Plaintiffs' and Class Members' PII.  Defendants' failure to protect the PII of Plaintiffs and Class Members frustrated Plaintiffs' and the Class Members' rights to the benefit of their bargains with Defendants, to enjoy the financial services of Defendants without incurring risks of property and identity theft.

80.    Plaintiffs and Class Members have lost the benefit of their bargain with Defendants by having their PII compromised and have been placed at an imminent, immediate and continuing risk of identity theft-related harm.

81.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## THIRD CAUSE OF ACTION

(Negligence)

82.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 81, inclusive, of this Complaint as if set forth fully herein.

83.    As described above, Defendants owed Plaintiffs and the Class Members duties of care in the handling of PII, which duties included keeping that PII safe and preventing disclosure of that PII to all unauthorized third parties.

84.    Additionally, Defendants had a duty to Plaintiffs and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' PII as required by California Civil Code § 1798.81.5 and Federal Trade Commission Act (15 U.S.C. § 45). This legal duty arises outside of any contractual, implied or express, responsibilities that Defendants had between Plaintiffs and Class Members, as it is "completely independent" of any contract. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004).

85.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

86.    Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

87.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described herein. Defendants' conduct was particularly unreasonable given the nature and amount

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

of PII in its stores obtained and stored, and the foreseeable consequences of a data breach at a company as large as Defendants', including, specifically, the damages that would result to Plaintiffs and Class Members.

88.     The harm that occurred as a result of the security breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

89.     California Civil Code § 1798.81.5(a)(1) states that: "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information." Section 1798.81.5(b) further provides that "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Further, § 1798.81.5(c) provides that "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party that is not subject to subdivision (b) shall require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

90.     Plaintiffs and Class Members are within the class of persons that § 1798.81.5 was intended to protect.

91.     Defendants violated § 1798.81.5 by adopting inadequate safeguards to protect the PII, and, on information and belief, failing to adopt industry-wide standards in their supposed protection of the PII, resulting in the disclosure of the PII to unauthorized third-parties.

92.     The harm that occurred as a result of the security breach is the type of harm that § 1798.81.5 was intended to guard against. Section 1798.81.5 clearly identifies businesses such as

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

First American who possess personal information about California residents and imposes on those businesses a duty to implement security procedures and practices which protect that personal information.

93.     Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

94.     In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiffs and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiffs and the Class Members.

95.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

96.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

97.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to implement processes that would detect a breach of their data security systems in a timely manner.

98.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to act upon data security warnings and alerts in a timely fashion.

99.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

material fact in the decision to purchase title insurance or other financial services from Defendants' or to entrust PII with Defendants.

100.    Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

101.    Defendants owed a duty of care to Plaintiffs and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendants collected PII from Plaintiffs and the Class Members directly. Defendants knew that a breach of its data systems would cause Plaintiffs and the Class Members to incur damages.

102.    Defendants breached those duties of care by adopting inadequate safeguards to protect the PII, and, on information and belief, failing to adopt industry-wide standards in their supposed protection of the PII, resulting in the disclosure of the PII to unauthorized third parties.

103.    As a direct and proximate result of Defendants' failure to adequately protect and safeguard the PII, Plaintiffs and the Class members suffered damages. Plaintiffs and the Class Members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft and theft of property, and for which Plaintiffs and the Class members were forced to adopt costly and time-consuming preventive and remediating efforts. Plaintiffs and the Class Members were also damaged in that they accepted employment terms which they would have refused had they known that Defendants would not protect their PII.

104.    The injury and harm suffered by Plaintiffs and the Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiffs and the Class Members to experience the foreseeable harm associated with the exposure of their PII.

105.    Defendants acted with wanton disregard for the security of Plaintiffs' and the Class Members' PII. Defendants knew or should have known that First American had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the PII of large companies' databases, such as First American's.

COMPLAINT AND DEMAND FOR JURY TRIAL

106.    A "special relationship" exists between Defendants and Plaintiffs and the Class Members.  Defendants entered into a "special relationship" with Plaintiffs and the Class Members when they contracted with Plaintiffs and the Class Members for title insurance and other services and obtained their PII from them.  As purveyors of financial security, Defendants stand in a fiduciary or quasi-fiduciary relationship with Plaintiffs and the Class Members.

107.    Furthermore, Defendants also created a "special relationship" with Plaintiffs and Class Members who provided their information to Defendants and their affiliates, by playing a large role in creating and maintaining centralized computer systems and data security practices that were used for storage of all of Defendants' customers' PII.

108.    Plaintiffs has suffered monetary injury in fact as a direct and proximate result of the acts of negligence committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## FOURTH CAUSE OF ACTION

(Violation of California Business and Professions Code § 17200 *et. seq.*)

109.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 108, inclusive, of this Complaint as if set forth fully herein.

110.    By their actions and conduct as alleged herein, Defendants have committed one or more acts of unfair competition within the meaning of California Business and Professions Code § 17200 ("UCL") that constitute unfair, unlawful and/or fraudulent business practices as those terms are defined under California law.

111.    Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members.  The exposure of PII to third parties is substantially injurious because of the significant harm that can result to the customer at the hand of those third parties, and the protective measures that the customer must undertake as a direct result of this exposure.  Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendant.  Plaintiffs and the Class Members could not reasonably have avoided this injury because they relied upon Defendant's

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

promises to protect and safeguard the PII from disclosure, as all consumers must who require title insurance.

112.    Defendants' failure to safeguard and protect Plaintiffs' and the Class Members' PII is violative of public policy as expressed in California Civil Code § 1798.81.5(a)(1), which states that: "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information." Defendants' failures and deficiencies are also violative of public policy as expressed in the Federal Trade Commission Act (15 U.S.C. § 45). The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).

113.    Defendants' business practices are also unfair because they significantly threaten or harm competition. Participation in today's credit economy is predicated on the security of the PII of the participants in that economy, in the sense that PII is an asset of the individual which, if lost to him or her, jeopardizes his or her very ability to maintain capital. Competitive economic activity cannot exist where PII goes unprotected.

114.    Defendants' business practices are unlawful under the UCL because Defendants violated California Civil Code § 1798.81.5, and the FTCA, 15 U.S.C. § 45.

115.    Defendants violated California Civil Code § 1798.81.5 and the FTCA by: (a) failing to implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided with access to Plaintiffs' and Class Members' PII.

116.    Defendants' business practices are also fraudulent under the UCL because they involved representations to the public which are likely to deceive the public. Defendants send to their customers, and maintain publicly visible on their website, a Privacy Notice which states that

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Defendants will "not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law." Privacy Notice, attached hereto as **Exhibit A**. The Privacy Notice also states, "[w]e will use our best efforts to ensure that no unauthorized parties have access to any of your information," and that "[w]e restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you." *Id*. It further provides, "[w]e will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values." *Id*. Finally, it states, "We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information." *Id*. This Privacy Notice contains false statements, inasmuch as Defendants did release the PII to unauthorized third parties, which was not necessary for the provision of any service, and was not permitted by law, Defendants did not use their best efforts to ensure that no unauthorized parties had access to the PII, Defendants did not restrict access to nonpublic information to parties who need to know the information in order to provide services to Plaintiffs and the Class Members, Defendants did not use their best efforts to train and oversee their employees on privacy issues, and Defendants most certainly did not maintain physical, electronic, and procedural safeguards that comply with federal regulations to protect the PII.

117.    Defendants' representations are likely to deceive the public because they are untrue and because they indicate that Defendants will protect the PII of their customers from disclosure to unauthorized third parties, when in fact they will not do so. A reasonable consumer would be likely to believe that his or her PII will be protected by Defendants, when that is not the case. Moreover, Plaintiffs and the Class Members relied on Defendant's representations in entering into contracts with Defendants for title insurance and other services, which they would not have entered had they known their PII would be unprotected.

118.    Plaintiffs and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts of unfair competition committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Court.  Plaintiffs and the Class Members suffered a monetary injury because they must purchase credit monitoring services and undertake other efforts to reduce the risk of identity theft from the security breach.  These are direct pecuniary losses which are attributable to Defendants' violation of the UCL.

119.    Plaintiffs and the Class Members also suffered a monetary injury when they agreed to pricing terms to which they would not have agreed had they known that their PII would not be protected.  Plaintiffs and the Class Members essentially paid for services that were, as Defendants promised, supposed to include data protection, and would not have paid the price they paid for those services had they known that data protection would not be included.

120.    Plaintiffs and the Class Members also suffered a monetary injury when they lost the value of their PII, which is a real asset for which companies will pay money.  Plaintiffs' PII, now that it has been exposed to hackers, is no longer worth the price that Plaintiffs could have obtained for it on the market.

121.    Plaintiffs have suffered monetary injury in fact as a direct and proximate result of the acts of unfair competition committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## FIFTH CAUSE OF ACTION

(Violation of the Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code § 1750 *et seq.*)

122.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 121, inclusive, of this Complaint as if set forth fully herein.

123.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in transactions with Plaintiffs and the Class Members which resulted in the sale of title insurance and other services from Defendants to Plaintiffs and the Class Members.

124.    Plaintiffs and the Class Members acquired title insurance and other services from Defendants.

125.    Defendants engaged in the following unfair and deceptive acts and practices in the sale of these services:  (1) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; (2) Representing

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (3) Advertising goods or services with intent not to sell them as advertised; (4) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

126.    Plaintiffs and the Class Members relied on Defendants' material representations that their PII would be protected from disclosure to third parties.

127.    As a result of Defendants' unfair and deceptive acts, Plaintiffs and the Class Members were harmed when their PII was unlawfully disclosed to third parties without their consent. Plaintiffs and the Class Members suffered risk of theft of property and theft of identity, and incurred costs in seeking to mitigate the harm resulting from those risks. Plaintiffs and the Class Members also accepted pricing terms to which they would not have agreed had they known that Defendants would not protect their PII. Plaintiffs and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts of unfair competition committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

128.    This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief. Plaintiffs will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by California Civil Code § 1782.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for relief as follows:

1.    For compensatory damages in an amount according to proof at trial;

2.    For restitutionary damages in an amount according to proof at trial;

3.    For affirmative injunctive relief mandating that Defendants implement and maintain reasonable security procedures and practices to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1    4.    For costs of suit and litigation expenses;

2    5.    For attorneys' fees under the common fund doctrine and all other applicable law;

3    and

4    6.    For such other and further relief as this Court may deem just and proper.

5                              **DEMAND FOR JURY TRIAL**

6    Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury

7    trial for all claims so triable.

8    Dated: June 25, 2019                          Respectfully submitted,

9                                                  **WILSHIRE LAW FIRM**

10

11                                                 /s/ *Thiago M. Coelho*

12                                                 Thiago M. Coelho
                                                   Justin F. Marquez

13                                                 Robert Dart
                                                   Patty Chen

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL